IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

DORETHIA SPEARMAN                                                                   PLAINTIFF

vs.                                                          CIVIL ACTION NO. 3:14-CV-00090-SAA

COMMISSIONER OF SOCIAL SECURITY                                      DEFENDANT

**MEMORANDUM OPINION**

Dorethia Spearman has filed an appeal under 42 U.S.C. § 405(g) for judicial review of the Social Security Commissioner's decision ceasing her entitlement to disability insurance benefits (DIB) under Section 223(f) of the Social Security Act. In a decision dated January 25, 2006, the Social Security Administration initially determined that plaintiff was disabled by the medically determinable impairment of depression and entitled to DIB as of January 25, 2003. Docket 7, p. 250, 252. On June 16, 2011, Commissioner performed a routine continuing disability review of plaintiff's disability and determined medical improvement had occurred, and plaintiff was no longer disabled as of June 1, 2011. *Id.* at 255. Upon request for reconsideration, the Administrative Law Judge ("ALJ") upheld the Commissioner's decision [Docket 12, p. 3], and the Appeals Council denied plaintiff's request for review on February 25, 2014. Docket 7, p. 7. Plaintiff then timely appealed to this court for review. Docket 1.

Because both parties have consented to having a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

# I. FACTS

Plaintiff was born October 15, 1962. Docket 7, p. 274. The most recent favorable decision finding plaintiff was disabled [the "Comparison Point Decision"] is the decision dated January 25, 2006.[1] *Id.* at 312-17. At the time of this Comparison Point Decision, plaintiff, who was then 43 years old, was granted period of disability ("POD") and DIB retroactively from January, 25, 2003. See *id.* at 250. The impairment which led to her disability status in 2006 was "major depression, recurrent, severe with psychotic features." *Id.* at 316. After plaintiff received DIB for several years, the Social Security Administration conducted a continuing disability review to evaluate whether plaintiff continued to suffer from her original disability. *Id.* at 324-28. The continuing disability review resulted in a finding that plaintiff was no longer disabled as of June 1, 2011. *Id.* On December 13, 2013, the ALJ held that plaintiff's disability – and therefore her entitlement to DIB and POD – terminated as of June 1, 2011. *Id.* at 263.

The ALJ's review of a decision to terminate DIB requires an eight-step sequential evaluation process. *See* 20 C.F.R. § 404.1594. Through the use of this process, the ALJ made several findings. Docket 7, p. 251-63. At the same time he found that plaintiff had experienced medical improvement as of June 1, 2011 [*Id.* at 255], the ALJ also determined plaintiff suffers from the medically determinable impairments of "disorders of the spine, depression, folliculitis, dermatitis, mirgraine headache[s], pharyngitis, hypertension, vitamin D deficiency, eczema, and anxiety disorders," but that those impairments do not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and

---

[1]The Comparison Point Decision is considered the point from which the Commissioner proceeds to decide whether a current benefits recipient has experienced medical improvement such that the beneficiary is no longer disabled.

404.1526). Docket 7, p. 252-53. Relying upon vocational expert [VE] testimony and the record as a whole, the ALJ determined plaintiff retains the Residual Functional Capacity (RFC) to

> lift, carry, push, or pull 20 lbs. occasionally and 10 lbs. frequently and to stand, walk, or sit for 6 hours of an 8-hour workday. The claimant also can never climb ladders, ropes, or scaffolds; can occasionally stoop; can perform routine and repetitive tasks; and can perform work that requires occasional decision-making.

*Id.* at 258. The ALJ went on to find that plaintiff could perform the jobs of a buttoner, a burr grinder, or a stuffer and consequently "was capable of making a successful adjustment to work that existed in significant numbers in the national economy." *Id.* at 263. In reaching his decision, the ALJ assigned significance to suspected malingering in the claimant's medical records during cognitive function testing by a consultative psychological examiner. *Id*. at 255-261. On February 25, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision [*id.* at 7-11], thus making the ALJ's decision the final administrative decision for purposes of judicial review. *Id.* at 15-33.

Plaintiff claims the ALJ erred by substituting his own judgment for that of medical experts and by drawing improper inferences from plaintiff's lack of mental health treatment without properly investigating the circumstances. Docket 12, p. 3-4.

## II. STANDARD OF REVIEW

It is well settled that this court's review of the Commissioner's decision is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 417 F.3d 457, 461 (5th Cir. 2005); *see also* 42 U.S.C. 405(g); *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). Substantial evidence is "more than a scintilla, less than a preponderance, and

3

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The Fifth Circuit has further stated that substantial evidence, "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988), quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Thus, this court may not overturn the Commissioner's decision if it is supported by substantial evidence – "more than a mere scintilla" – and correctly applies the law. *Morris v. Shalala,* 207 F.3d 744, 745 (5th Cir. 2001); *see also Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

The Fifth Circuit has explicitly addressed the scope of this court's review of the termination of a person's benefits. *See Taylor v. Heckler*, 742 F.2d 253, 256 (5th Cir. 1984),

citing *Buckley v. Heckler*, 739 F.2d 1047, 1048-49 (5th Cir. 1984). As noted in *Buckley*, even though the burden of proving disability is on a Social Security claimant, "once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remain unchanged." 739 F. 2d at 1049, quoting *Weinberger v. Rivas*, 475 F.2d 255, 258 (5th Cir. 1973). In other words, once benefits have been awarded, the claimant is afforded a "presumption of continuing disability that requires the Secretary to provide evidence" that the claimant's condition has improved. *Taylor*, 742 F.2d at 255. In addition, the Commissioner must weigh the facts which formed the basis for the prior determination of disability with "the [Commissioner]'s new evidence and any additional evidence submitted by the claimant." *Id.* Absent exceptions not relevant here, "a claimant's benefits may be terminated only if substantial evidence demonstrates *both* that 'there has been any medical improvement' *and* that 'the individual is now able to engage in substantial gainful activity.'" *Hallaron v. Colvin*, 578 Fed. Appx. 350, 353 (5th Cir. 2014), citing 42 U.S.C.A. § 1382c(a)(4)(A). "Agency regulations define 'medical improvement' as 'any decrease in the medical severity of [a recipient's] impairment(s) which was present at the time of the most recent favorable medical decision that [ she was] disabled or continued to be disabled.'" *Id.* at 351-52, quoting 20 C.F.R. § 404.1594(b)(1).

### III. DISCUSSION

#### A. The Eight-Step Evaluation Process

The Social Security Administration may terminate benefits if the agency concludes, after reviewing a claimant's case, that the claimant's impairment "has ceased, does not exist, or is not disabling . . . ." 42 U.S.C.A. 423(f). In a typical social security case, where the issue is whether

5

a claimant is disabled and should therefore be granted Social Security benefits in the first place, the Commissioner (through an ALJ) applies a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010). In cases such as this, however, where the Commissioner is deciding whether to terminate existing benefits due to an alleged medical improvement, 20 C.F.R. § 404.1594(f) prescribes an eight-step evaluation process to determine

> (1) whether claimant is engaging in substantial gainful activity;
>
> (2) if not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;
>
> (3) if impairments do not meet a listing, whether there has been medical improvement;
>
> (4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work;
>
> (5) if there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies;
>
> (6) if medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;
>
> (7) if the claimant has a severe impairment, whether the claimant can perform past relevant work; and
>
> (8) if the claimant cannot perform past relevant work, whether the claimant can perform other work.

The ALJ applied the eight-step analysis to plaintiff's case. At step one, he determined plaintiff had not engaged in any substantial work activity since the Comparison Point Decision. Docket 7, p. 252. At step two, he found plaintiff had medically determinable impairments of "disorders of the spine, *depression*, folliculitis, dermatitis, migraine headache[s], pharyngitis, hypertension, vitamin D deficiency, eczema, and anxiety disorders," but that these impairments did not meet or medically equal a listing. *Id.* at 252-253. (emphasis added by the court).

Proceeding to step three, the ALJ concluded that there had been a medical improvement, demonstrated by "a decrease in medical severity of the impairment present at the time of the [Comparison Point Decision]" and that "the evidence of record indicates that the claimant's depression now causes no more than mild or moderate limitations in several areas of mental functioning." *Id.* at 255.

At step four, the ALJ found plaintiff's medical improvement was related to her ability to work [*id.* at 257], a finding which dictated that the analysis skip to step six. *See 20* C.F.R. § 404.1594(f)(4). At step six, the ALJ categorized plaintiff's mental impairments and spinal disorders qualified as severe, but found those impairments in combination did not significantly limit claimant's ability to perform a limited range of light work. *Id.* at 257-58. The ALJ also concluded that plaintiff had the residual functional capacity ("RFC") "to lift, carry, push, or pull 20 lbs. occasionally and 10 lbs. frequently and to stand, walk, or sit for 6 hours of an 8-hour workday [to] never climb, ladders, ropes, or scaffolds; [to] occasionally stoop; [to] perform routine and repetitive tasks; and [to] perform work that requires occasional decision-making." *Id.* at 258. At step seven, he found that plaintiff was unable to perform her past relevant work as a sewing machine operator. *Id.* at 262. At the eighth and final step the ALJ found in light of testimony from the VE that plaintiff was able to perform jobs as a buttoner, a burr grinder, or a stuffer, of which there are reportedly 10,370 jobs in Mississippi and exponentially more in the national economy. *Id.* at 263, 300-01.

B. Medical Improvement

Plaintiff claims the ALJ erred in substantiating the medical improvement claim by substituting his own judgment for that of examining psychologists Dr. Whelan and Dr. Small and

7

by failing to apply the proper legal standards. Docket 12, p. 3-4, 6. Making a determination of medical improvement that terminates benefits requires an ALJ to provide "expert medical evidence substantiating such a conclusion." *Groskreutz v. Barnhart*, 108 Fed. Appx. 412, 417 (7th Cir. 2004); *see also Loza v. Apfel*, 219 F.3d 378, 393, 395 (5th Cir. 2000); 20 C.F.R. § 404.1594(c)(1) ("Medical improvement . . . is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).").

The ALJ assigned Dr. Whelan's opinion "some weight," but ultimately declined to adopt it because he felt it was "an assessment of the impact of the claimant's physical conditions, which [were] outside Dr. Whelan's area of expertise." Docket 7, p. 261. Similarly, the ALJ gave Dr. Small's opinion little weight because he found it "inconsistent with the preponderance of the evidence of record." *Id.*

The law is clear that an ALJ "is not at liberty to make a medical judgment regarding the ability or disability of a claimant to engage in gainful activity, where such inference is not warranted by clinical findings." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000), citing *Spencer v. Schweiker*, 678 F.2d 42, 45 (5th Cir. 1982). An ALJ may not "play doctor," *Chase v. Astrue*, 458 Fed. Appx. 553, 556-57, or reach a medical conclusion without expert medical evidence substantiating such a conclusion, *Groskreutz v. Barnhart*, 108 Fed. Appx. 412, 417 (7th Cir. 2004); *see also Loza*, 219 F.3d at 395; 20 C.F.R. § 404.1594(c)(1). Although the court is sympathetic to the difficulties involved in performing a proper continuing disability review, particularly when suspicions of a claimant's malingering arise, an ALJ's inability to make medical conclusions without expert medical evidence remains the same.

8

In this case, the ALJ referenced the plaintiff's apparent lack of seeking dedicated mental health treatment as evidence that her depression had improved and as detracting from her credibility. Docket 7, p. 256. There is no question, however, that plaintiff has continually been prescribed antidepressants by her treating physicians since her original diagnosis. *See, e.g., id.* at p. 495-526, 668-79, 688-90, 716, 718. In addition, the ALJ relied on entries in her treatment records from her medical doctor to find that a preponderance of the evidence of record substantiated finding medical improvement of her depression. Docket 7, p. 261. He cited claimant's historical treatment records and "normal psychological statuses during many of her treatment episodes," to infer that "the limitations that the claimant reported are due to her alleged physical problems rather than her depression." *Id.*

On the surface, these findings seem to preclude a decision that claimant's disability continues. However, further review reveals that the records in question failed to provide substantial justification for finding medical improvement or for terminating claimant's disability. First, there was no expert medical or psychological evidence to demonstrate that there has been medical improvement of claimant's initial listed disability – her depression. The law is clear: an ALJ may not "play doctor," (*Chase v. Astrue*, 458 Fed. Appx. 553, 556-57) or reach a medical conclusion without expert medical evidence substantiating that conclusion. *Groskreutz v. Barnhart*, 108 Fed. Appx. 412, 417 (7th Cir. 2004); *see also Loza*, 219 F.3d at 395; 20 C.F.R. § 404.1594(c)(1).

Although the ALJ claimed to rely on "a preponderance of the record" as evidence to reach his finding that there has been medical improvement [Docket 7, p. 255-57], the treatment records the ALJ cites as evidence that claimant's condition has improved were created by health

9

professionals during visits to them by plaintiff for treatment of illnesses or conditions other than her depression.  Many, many of these visits were based on plaintiff's complaints of chronic pain, which the doctors attempted to treat in various ways.  Plaintiff has consistently sought relief from her treating physician for her pain over many years.  Her treating physicians were general practitioners, urologists or neurologists, none of whom specialized in mental health, and the purpose of plaintiff's visits to them was not for treatment or assessment of her mental health or depression at the time of treatment.[2]  The court has carefully combed the medical records in this case.  The doctor's "normal psychological statuses during many of her treatment episodes" which the ALJ found so significant – indeed determinative – are at least equally met either with lack of such notations or with references to anxiety, depression or nervousness during visits, and the plaintiff's treating physician consistently noted her history of depression and anxiety.  *See, e.g., id.* at p. 495-526, 668-79, 688-90, 718-22, 727-34.

This case presents circumstances not unlike those in *Taylor v. Heckler*, *supra*.  There, the ALJ relied on his own lay opinion and an unrelated medical opinion to determine that claimant's disability had ceased.  742 F.2d at 254-55.  Addressing the appropriate question to be addressed, the Fifth Circuit clarified,

> the issue before us is whether, according a presumption to the prior determination of disability, substantial evidence supports the [Commissioner's] determination (a) that new evidence shows a change in the claimant's condition sufficient that (b) weighed with the facts upon which the initial disability determination was made and also with the additional evidence of continuing disability submitted by the claimant, the claimant's initial disability has now

---

[2]  The ALJ's specific citations were to medical records he claimed evidenced "normal psychological findings" but which were not assessing mental health assessments or treating claimant's mental health at the time of treatment.  *See* Docket 7, p. 254 (citing Exhibit C3F on p. 495-527, Exhibit C22F on p. 718-22, Exhibit C24F on p. 727-34, and Exhibit C25F on p. 735-37).

ceased.

*Id.* at 256. In this instance the ALJ neither detailed the facts underlying the previous finding of disability[3] nor compared those facts with any new evidence of a change in claimant's condition. Instead, like in *Taylor*, the ALJ relied on his own lay deductions from various medical records that were devoid of any evaluation of claimant's depression.

In fact, similar to the *Taylor* and *Buckley* cases, the ALJ made lay deductions while simultaneously rejecting qualified medical opinions. The record shows Drs. Whelan and Small were the only *mental* health professionals to address claimant's initial listed disability – her depression – at all. Dr. Whelan, a clinical psychologist, noted in treatment records that he certainly thought claimants claims of anxiety and depression were genuine despite the fact that he suspected malingering when he attempted to assess claimant's intellectual and academic abilities. Docket 7, p. 619. Dr. Whelan reviewed medical reports from plaintiff's physicians dating from approximately eight months before his examination. *Id.* at 617. Although he was "not inclined to give her a severe diagnosis for her depression," Dr. Whelan did conclude that plaintiff "probably has borderline intelligence," and "her depressive disorder, not otherwise specified, and anxiety disorder, not otherwise specified, would be predicted as a result of her chronic pain syndrome. Since that [her chronic pain] is documented, I certainly think her symptoms of anxiety and depression are genuine." *Id.* at 619. Dr. Whelan expected plaintiff's depression and anxiety to continue as long as she continues to have physical pain. *Id.*

Similarly, Dr. Small, another clinical psychologist, noted that claimant suffered from "major depression - recurrent" and that she appeared to "have a combination of age, chronic

---

[3] See *Buckley v. Heckler*, 739 F.2d 1047, 1049 ("The facts upon which the prior determination of disability was made must be weighed by the trier of fact along with new evidence submitted by both parties.").

pain, subnormal intelligence, anxiety and *depression*." *Id.* at 744. Neither Dr. Small nor Dr. Whelan was asked to compare plaintiff's current mental health status to her condition at the time of her original benefits award, and neither was asked to express an opinion regarding whether plaintiff's depression is such that she has experienced "medical improvement" which might lead the Commissioner to determine that she was no longer disabled.

Despite the above noted statements by Drs. Whelan and Small, the ALJ elected not to adopt the opinions of either mental health professional. *Id.* at p. 261. Rather, the ALJ chose to make a determination based on treatment records, which, as discussed previously, were provided by (i) non-mental health professionals, (ii) who were not actively attempting to assess whether claimant's depression had improved or was continuing, and (iii) who, despite all this, still did not report any medically conclusive evidence that there had been medical improvement or that claimant no longer suffered from depression. *See* Docket 7, p. 254 , citing pp. 495-527, 718-22, 727-34 & 735-37. Thus, in making a determination that medical improvement had occurred, the ALJ reached a medical conclusion he was not qualified to make nor substantially justified in making.

The court holds that the ALJ's decision that plaintiff has experienced medical improvement was not based on substantial evidence. Just as in *Buckley*, the ALJ here looked to other medical proof rather than proof which would have allowed him to weigh the Comparison Point Decision against plaintiff's actual current mental condition. Also as in *Buckley*, because there was no new evidence to prove either that the plaintiff had experienced medical improvement or that she no longer suffered from her initial disability, "the prior determination of disability stands." *Buckley*, 739 F. 2d. at 1050.

12

## IV. CONCLUSION

For the foregoing reasons, the court finds substantial evidence did not demonstrate that there had been evidence of medical improvement of claimant's disability, as required to support the ALJ's termination of claimant's benefits under the Social Security Act. The decision is reversed. Furthermore, because the law in this Circuit has been clear on this point for decades, the court finds that the Commissioner's position was not substantially justified, and plaintiff's counsel is entitled to an award of attorney's fees. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 3rd day of February, 2015.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE